**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Ray Viramontes,<br><br>              Petitioner,<br><br>v.<br><br>Charles L Ryan, et al.,<br><br>              Respondents. | No. CV-16-00151-TUC-RM<br><br>**ORDER** |

On March 14, 2016, Petitioner Robert Viramontes, who is confined in the Arizona State Prison Complex-Lewis, filed a pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) On October 19, 2016, Respondents Charles Ryan and Attorney General of the State of Arizona filed a Limited Answer, arguing that Petitioner's claims are both untimely and procedurally defaulted. (Doc. 22.) On November 16, 2016, Petitioner filed a pro se Traverse. (Docs. 23, 24.) On May 4, 2018, Magistrate Judge Bernardo P. Velasco issued a Report and Recommendation, recommending that this Court find the Petition timely, grant it, and remand to the Arizona state court for further proceedings. (Doc. 29.) Respondents filed Objections on June 8, 2018, and Petitioner (now represented by the Federal Public Defender's Office) filed a Response on July 23, 2018. (Docs. 34, 44.) Because the Report and Recommendation did not address Respondents' procedural-default defense, the Court ordered supplemental briefing on that issue. (Doc. 48.) Petitioner filed his Supplemental Brief on October 24, 2018, and Respondents filed their Response on November 14, 2018. (Docs. 51, 52.)

## I.    Factual & Procedural Background

### A.    Arizona's Sentencing Scheme

Prior to January 1, 1994, a defendant convicted of first-degree murder could be sentenced to life with the possibility of parole after 25 years. *See State v. Fierro*, 804 P.2d 72, 90 (Ariz. 1990). In 1993, Arizona enacted its truth-in-sentencing law and eliminated parole for crimes committed on or after January 1, 1994. *See State v. Rosario*, 987 P.2d 226, 230 (Ariz. Ct. App. 1999). Defendants convicted of first-degree murder on or after that date face three possible sentences: death, natural life (life with no chance of release on any basis), or life with the possibility of "release" after 25 years. *See State v. Martinez*, 100 P.3d 30, 33 (Ariz. Ct. App. 2004). "Release" may be granted only through executive clemency (e.g., a pardon)—a form of relief unlikely to be granted to defendants convicted of first-degree murder. *See State v. Vera*, 334 P.3d 754, 760 (Ariz. Ct. App. 2014).

Despite the elimination of parole, prosecutors continued to offer parole in plea agreements, and judges continued to accept such agreements and impose sentences of life with the possibility of parole. *See, e.g.*, *id.* (noting that the sentencing court was mistaken about the availability of parole); Governor's Letter to Ariz. Sec'y of State (Apr. 30, 2018), available at https://www.azleg.gov/govlettr/53leg/2r/sb1211.pdf (expressing puzzlement as to why parole sentences continued to be imposed after January 1, 1994). In response, the Arizona legislature passed Senate Bill 1211, which honors those plea agreements notwithstanding the elimination of parole. *See* Ariz. Rev. Stat. § 13-718. No form of relief exists for defendants who received the same sentence following conviction at trial.

### B.    Petitioner's Conviction & Sentence

Petitioner was charged with first-degree murder, first-degree burglary, and two counts of aggravated assault, stemming from an incident that occurred on December 25, 1998. (Doc. 39-1 at 1–2.)[1] Prior to trial, Petitioner's attorney, Daniel R. Grills, sent Petitioner a letter communicating a plea offer from the State, which would require Petitioner to spend at least 20 years in prison. (Doc. 1-2, Ex. I, at 28.) Mr. Grills described

---

[1]    Record citations refer to the page numbers electronically generated by the Court's filing system.

the alternative as "fac[ing] a possibility of the rest of your life in prison." (*Id.*) During a subsequent pretrial hearing, the following exchange took place:

The State:        Your Honor, just so we can put it on the record, I know that we had – this is a request that I would like to make. I know that previously you've asked us to see if we can come to any agreement upon a – a possible plea agrement [sic] in this case. . . . I was wondering if the Court would be willing to advise Mr. Viramontes, at this time, of the sentencing – possible sentencing range that he is looking at, just so that we can get it on the record that he has been made aware of the possible sentencing range and he still chooses not to – not to –

The Court:        Is there some offer that the State still extends to the defendant?

                  . . . .

The State:        The offer that I was going to make was the defendant plead to second degree murder with one count of aggravated assault, dangerous nature, with a floor – a minimum of 20 years as the sentence.

                  . . . .

The Court:        Without that, the first degree murder carries a potential life sentence, probation at 25 years or no probation?

The State:        The – it would be – first degree would be – I believe, it would be probation after 25.

                  . . . .

The Court:        Mr. Grills, have you discussed that with – this offer with your client or do you wish to?

Mr. Grills:       I have – Your Honor, I think there would have been a chance if it wasn't set on the floor, as he called it, of 20. I explained to the defendant he is 19, if he got to 20, you know, he could be out before he is 40, otherwise he's looking at possibly never getting out of prison, but I'm satisfied, Your Honor, that as he sits here today, he is not interested in that plea.

Petitioner:       (Nods head.)

| | | | |
|---|---|---|---|
| The Court: | All right. So that you know, Mr. Viramontes, the potential penalty for first degree murder, with which you are charged, is life; if you're convicted of first degree murder, you must receive life. | | |

. . . .

Yeah, so the sentences would have to run together, even if you were convicted of all of them, except that Count 4, which is the 7 to 21, could be consecutive, but if you were convicted on Count 1 [i.e., first-degree murder], it wouldn't matter because that's a life sentence anyway and according to the offer made by the State then you would be looking at a maximum of – a minimum of 20 years, according to their offer . . . .

. . . .

So as long as you understand that, Mr. Viramontes, and it's entirely up to you whether you wish to go to trial or whether you wish to accept the State's offer and if you want to discuss it further with your attorney, I'll give you time to do it. If you don't need to, then you can let me know that, too.

Petitioner: Your Honor, I don't want it.

The Court: You don't want the plea offer?

Petitioner: No, sir.

(Doc. 39-3 at 14–20.)

Petitioner was convicted on all counts. (Doc. 34-1, Ex. B, at 253–54.) At the sentencing hearing, Mr. Grills argued: "[Petitioner's crime] is totally out of character and I hope that Your Honor would consider the life sentence with parole at 25 years is more than adequate sentencing and I think that some people might even argue that itself, might be excessive." (*Id.* at 261–62.) The trial court did not comment on Mr. Grills' erroneous belief that life with the possibility of parole was an available sentence. (*See id.* at 262–65.)

On the first-degree murder conviction, the trial court ordered "that [Petitioner] be imprisoned for life, no release eligibility until the completion of 25 years of service of the

sentence." (*Id.* at 263.)  The judgment reflects a sentence on the murder conviction of "Life With No Release On Any Basis Until The Completion of the Service of 25 Calendar Years." (Doc. 1-2, Ex. M, at 175.)  Petitioner also received concurrent 10-year sentences on both aggravated assault convictions and a consecutive 10.5-year sentence on the first-degree burglary conviction. (*Id.* at 176–78.)  Petitioner appealed to the Arizona Court of Appeals, which affirmed, and to the Arizona Supreme Court, which denied review. (Doc. 1-1, Ex. C, at 52–61; Doc. 22-1, Ex. B, at 5.)  He did not seek review by the U.S. Supreme Court. (Doc. 1 at 3.)

### C.   State Post-Conviction Proceedings

On January 8, 2002, Petitioner filed, through counsel, his first petition for post-conviction relief ("PCR"), alleging that Mr. Grills provided ineffective assistance of counsel by failing to challenge the felony-murder rule on due process grounds; failing to challenge expert testimony restrictions imposed by the trial court; withdrawing his request for an expert to testify about Petitioner's head injuries during an evidentiary hearing; and failing to adequately challenge the admissibility of Petitioner's confession. (Doc. 22-1, Ex. E, at 14–16.)  Both the PCR court and Arizona Court of Appeals denied relief, and Petitioner did not seek review in either the Arizona Supreme Court or the U.S. Supreme Court. (Doc. 1-1, Ex. G, at 114–18; Doc. 22-1, Ex. F, at 37–42.)

On April 17, 2014, Petitioner, now pro se, filed a second PCR notice, asserting that he had recently been informed by the Arizona Department of Corrections that his only chance at release was through executive clemency; that Mr. Grills misadvised him that he would be released after 25 years if convicted at trial; and that the truth-in-sentencing law is unconstitutionally vague. (Doc. 39-14 at 4–5.)  Petitioner indicated that the second PCR notice was based on newly discovered material facts which probably would have changed his verdict or sentence. (*Id.* at 2.)

On August 26, 2014, Petitioner, through counsel, filed his second PCR petition. (Doc. 1-2, Ex. I, at 18–26.)  He raised the following grounds for relief:

1.  Mr. Grills rendered ineffective assistance by misadvising him that he would be

eligible for parole after 25 years, leading him to reject the plea agreement;

2.  his first PCR attorney, R. Lamar Couser, rendered ineffective assistance by failing to raise Mr. Grills' error in the first PCR petition; and

3.  the trial court erred by misadvising him that he would be eligible for "probation" (according to Petitioner, a clearly mistaken reference to "parole") after 25 years, when Arizona's truth-in-sentencing law foreclosed that possibility.

(*Id.* at 23–25.)

On October 31, 2014, the PCR court denied Petitioner's second PCR petition. (*Id.*, Ex. L, at 108–11.) The PCR court determined that Petitioner's first claim was precluded because it should have been raised in the initial PCR proceeding, and because Petitioner failed to establish that review in a second PCR proceeding was proper under the newly-discovered-facts exception. (*Id.* at 110.) The PCR court also determined that Petitioner's second claim was non-cognizable under Rule 32 of the Arizona Rules of Criminal Procedure. (*Id.* at 109–10.) The PCR court found that Petitioner's third claim was precluded because it did not track any of the five cognizable bases for relief available in a successive PCR proceeding. (*Id.* at 111.) The PCR court also found that Petitioner's third claim was meritless because, contrary to Petitioner's allegations, it had not advised Petitioner that parole was available. (*Id.* at 110.)[2]

On November 24, 2014, Petitioner filed a pro se motion for reconsideration. (*Id.*, Ex. M, at 114–19.) Petitioner denied abandoning his claim that the truth-in-sentencing law is unconstitutionally vague. (*Id.* at 114–15.) He contended that his second PCR notice was sufficient to raise the issue and that, although the issue was omitted from the second PCR petition, the PCR court should have nevertheless ruled on it. (*Id.*) Turning to the merits, Petitioner argued that the truth-in-sentencing law's vagueness caused the trial court and his attorney to misadvise him that he would be eligible for parole after 25 years. (*Id.* at 118.) Pointing out that Arizona courts routinely imposed sentences in violation of the truth-in-

_____

[2]  Superior Court Judge John Leonardo made the "probation" statement during Petitioner's criminal case. It was Superior Court Judge James Marner, however, who determined that Judge Leonardo did not mean "parole."

sentencing law, Petitioner argued that his realization that he cannot be paroled was newly discovered evidence warranting relief. (*Id.* at 116–18.)

The PCR court denied the motion on December 15, 2014, finding that Petitioner had indeed abandoned his claim by omitting it from his brief. (*Id.*, Ex. N, at 181.) The PCR court also determined both that the truth-in-sentencing law is not vague and that Petitioner's claim of ignorance was without factual support. (*Id.* at 181–82.)

Petitioner (still pro se) filed a petition for review in the Arizona Court of Appeals. (Doc. 22-1, Ex. G, 44–48.) He raised three issues:

1. There are no procedural waivers for an unconstitutional sentence;

2. requiring him to raise ineffective-assistance claims in PCR proceedings (where he does not have a protected right to effective counsel) instead of his direct appeal (where he does have a protected right to effective counsel) is a violation of federal due process; and

3. the PCR court "abused its discretion."

(*Id.* at 47.)

On April 3, 2015, the Arizona Court of Appeals granted review but denied relief. (Doc. 1-2, Ex. P, at 283–86.) It held that Petitioner waived his claims by failing to cite legal authority, that Petitioner's claims were untimely, and that Petitioner's claim of ineffective assistance of PCR counsel was non-cognizable. (*Id.* at 285–86.) Petitioner sought review by the Arizona Supreme Court, but review was denied on August 24, 2015. (Doc. 22-1, Ex. I, at 87.) He did not seek review by the U.S. Supreme Court.

**D.    Federal Habeas Petition**

On March 14, 2016, Petitioner filed the currently pending Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.)[3] He raises four claims:

1. The Arizona trial court misadvised him that he would be eligible for parole after 25 years;

2. Mr. Grills provided ineffective assistance of counsel during plea negotiations by

---

[3]    Petitioner did not sign the Petition until August 10, 2016. (Doc. 18.)

misadvising him of the consequences of rejecting the plea agreement and proceeding to trial;

3. Mr. Couser provided ineffective assistance of counsel in the first PCR proceeding by failing to raise Mr. Grills' ineffectiveness during plea negotiations;[4] and

4. Arizona's truth-in-sentencing law is unconstitutionally vague as applied to first-degree murder sentences.

(*Id.* at 6–19.)

Respondents filed a Limited Answer on October 19, 2016, arguing that Petitioner's claims are untimely and procedurally defaulted without excuse.  (Doc. 22 at 6.)

**E.    Report & Recommendation**

Judge Velasco issued the Report and Recommendation on May 4, 2018, determining that the Petition is timely only with the benefit of equitable tolling.  (Doc. 29 at 14–15.) Judge Velasco found that Petitioner reasonably relied on the trial court's and prosecutor's statements that Petitioner would be eligible for "probation" after 25 years and, furthermore, that the term "probation" was a mistaken reference to "parole."  (*Id.* at 16–17.)  Judge Velasco found Petitioner's claim of ignorance especially credible in light of the fact that Arizona courts have mistakenly sentenced hundreds of defendants to "life with the possibility of parole" since enactment of the truth-in-sentencing law.  (*Id.* at 17.) Accordingly, Judge Velasco recommends that the Petition be granted and that this action be remanded to the Arizona courts for further proceedings.  (*Id.* at 19.)

Respondents filed Objections on June 8, 2018. (Doc. 34.)  First, they object to Judge Velasco's finding that Petitioner is entitled to equitable tolling.  (*Id.* at 2.)  They argue that the record belies Petitioner's assertion that he was informed by Mr. Grills and the trial court that he would be sentenced to life with the possibility of parole, and, consequently, Petitioner was dilatory in waiting years to seek relief.  (*Id.* at 3–9.)  Second, Respondents object to any implied finding that Petitioner's claims are not procedurally defaulted.  (*Id.* at 10.)  Finally, Respondents object to Judge Velasco's recommendation to grant the

---

[4]    Claim Three will be dismissed as non-cognizable on federal habeas review. 28 U.S.C. § 2254(i).

Petition, as they have not yet had an opportunity to brief the merits.  (*Id.* at 10–11.)

## II.  Standard of Review

A district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations" made by a magistrate judge.  28 U.S.C. § 636(b)(1).  The district judge must "make a de novo determination of those portions" of the magistrate judge's "report or specified proposed findings or recommendations to which objection is made."  *Id.*

Because Petitioner's § 2254 Petition was filed after April 24, 1996, this case is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996.  *See Patterson v. Stewart*, 251 F.3d 1243, 1245 (9th Cir. 2001).

## III.  Statute of Limitation

A one-year period of limitation applies to petitions for writ of habeas corpus filed by a person in custody pursuant to the judgment of a state court.  28 U.S.C. § 2244(d)(1).  AEDPA's one-year limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.*  The limitation period is tolled during the period in "which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  *Id.* § 2244(d)(2).  The limitation period is also subject to equitable tolling under certain circumstances.  *Holland v. Florida*, 560 U.S. 631, 634 (2010).

### A.  Accrual Date

Petitioner argues that he is entitled to a start date determined in accordance with § 2244(d)(1)(D).  The Court agrees.

The statute of limitations begins to run under § 2244(d)(1)(D) when the factual predicate of a claim could have been discovered through the exercise of due diligence, not when it actually was discovered. Due diligence does not require the maximum feasible diligence, but it does require reasonable diligence in the circumstances.

Section 2244(d)(1)(D) provides a petitioner with a later accrual date than section 2244(d)(1)(A) only if vital facts could not have been known by the date the appellate process ended. The due diligence clock starts ticking when a person knows or through diligence could discover the vital facts, regardless of when their legal significance is actually discovered.

Although section 2244(d)(1)(D)'s due diligence requirement is an objective standard, a court also considers the petitioner's particular circumstances.

*Ford v. Gonzalez*, 683 F.3d 1230, 1235 (9th Cir. 2012) (internal citations, quotation marks, and footnote omitted).

Respondents contend that certain statements in the record show Petitioner could not have reasonably believed he would be eligible for parole, and thus Petitioner was aware of the vital facts at the conclusion of his direct appeal. The problem with Respondents' position, however, is that it does not satisfactorily explain why the trial court and prosecutor agreed that Petitioner would be eligible for "probation at 25 years," or why Mr. Grills requested a "life sentence with parole at 25 years." Although there is some ambiguity in the statements about "probation," Mr. Grills' statement at the sentencing hearing leaves no doubt he advised Petitioner that a sentence with parole eligibility was available.

Respondents do not comment on this clear evidence of Mr. Grills' misbelief. Instead, they argue that other statements made by Mr. Grills—that Petitioner was "facing a possibility of . . . life in prison" (in the letter) and "looking at possibly never getting out of prison" (at the pretrial hearing)—show he did not advise Petitioner that parole was possible. Respondents fail, however, to provide the proper context for these statements, which were made during discussions about the plea offer. Petitioner faced one of two sentences if convicted at trial: natural life or life with the possibility of release after 25 years. In context, it appears that Mr. Grills was emphasizing the difference between the

plea offer, which carried a term-of-years sentence, and the possible sentence of natural life.[5]  Regardless, it would be nonsensical to conclude that Mr. Grills argued for a life-with-parole sentence without having informed Petitioner that sentence was available.

The record also supports finding that the trial court harbored the same misbelief as Mr. Grills.  The most significant evidence on this point is the trial court's and prosecutor's statements regarding "probation at 25 years."  Petitioner contends that these statements show the trial court believed that the most lenient sentence for first-degree murder carried a meaningful chance for release, such as parole.  Respondents avoid analyzing the trial court's meaning; instead, they emphasize other statements in the record which, they contend, show Petitioner was informed that "his conviction for first degree murder would send him to prison for the rest of his life."  Petitioner has the better argument.

The Court agrees that the reference to "probation" was a mistaken reference to "parole."  Probation and parole share many similarities (e.g., they both involve supervised conditional release), including that they differ in kind from executive clemency.  Furthermore, if the trial court knew that parole was unavailable, it would have commented on Mr. Grills' specific request for a life-with-parole sentence.  Both circumstances convincingly show that the trial court believed that parole was available.

Despite the foregoing, Respondents contend that the trial court actually admonished Petitioner that he would spend a lifetime in prison if convicted of first-degree murder.  Again, though, they rely on a statement taken out of context:

> Yeah, so the sentences would have to run together, even if you were convicted of all of them, except that Count 4, which is the 7 to 21, could be consecutive, but if you were convicted on Count 1 [i.e., first-degree murder], it wouldn't matter because that's a life sentence anyway and according to the offer made by the State then you would be looking at a maximum of – a minimum of 20 years, according to their offer . . . .

(Doc. 39-3 at 19.)  The trial court, like Mr. Grills, was merely emphasizing the difference

---

[5]     Mr. Grills may also have been referring to the fact that a life sentence with the possibility of parole could have still been a life sentence.  *See State v. Parle*, 521 P.2d 604, 608 (Ariz. 1974) ("Parole is a matter of grace, and a person has no right to expect anything other than the possibility of parole." (internal citation omitted)).

between the plea offer and the potential sentences for first-degree murder. Additionally, if the trial court truly meant that any consecutive sentences "wouldn't matter," it could have made that statement strictly true by sentencing Petitioner to natural life. Instead of doing that, however, it sentenced Petitioner to life with the possibility of release after 25 years—*after* confirming with the prosecutor that "probation" was available after 25 years, and *immediately after* hearing Mr. Grills' request for life with "parole" after 25 years.

Respondents also assert that Petitioner understood he would never be released if convicted because he testified at trial that the State was "trying to get [him] the rest of [his] life in prison." Petitioner's statement was true as far as it goes: if convicted of first-degree murder, the State could seek a natural life sentence, which would prevent his release on any basis.[6] Moreover, as explained above, Petitioner was advised by Mr. Grills that the most lenient sentence for first-degree murder carried the possibility of parole.

Finally, Respondents point to Petitioner's sentencing documents, which state that Petitioner could be sentenced to either natural life or life with the possibility of "release" after 25 years. Their reliance on these documents is unpersuasive. It would be bizarre to conclude that the use of "release" instead of "parole" in these documents should have aroused Petitioner's suspicion about the nature of his sentence, when neither his attorney nor the trial court had concerns with the terminology.

In short, none of the statements relied upon by Respondents show Petitioner was properly advised that, if convicted of first-degree murder, his only chance at release was through executive clemency. To the contrary, the record indicates that all involved were operating under the same misimpression, i.e., that a person convicted of first-degree murder in 1999 could be sentenced to life with the possibility of parole after 25 years. Accordingly, the factual predicate of Petitioner's claims—that he was misadvised that he could be sentenced to life with the possibility of parole if convicted at trial—was not reasonably discoverable at the time his direct appeal ended.[7] *Ford*, 683 F.3d at 1235.

---

[6]     The State *did* argue for a natural life sentence at the sentencing hearing. (Doc. 34-1, Ex. B, at 254.)

[7]     Judge Marner found that Judge Leonardo did not mean "parole" when he said "probation." (Doc. 1-2, Ex. L, at 110.) That finding is entitled to a presumption of

As a fallback argument, Respondents contend that Petitioner did not act with diligence because he had "constructive notice" of the truth-in-sentencing law and, alternatively, he could have asked his appellate and PCR attorneys about the legal distinction between "release" and "parole." The Court disagrees. Petitioner fell prey to an error so widespread among attorneys and judges that Arizona enacted new legislation, effective August 2018, in response. Although Petitioner does not benefit from that legislation, it nevertheless is indicative of the unusual circumstances of his case.[8] The recentness of the legislation is particularly telling regarding the difficulty associated with detecting the mistake. Indeed, the Arizona Court of Appeals affirmed a life-with-parole sentence for first-degree murder as recently as January 2018. *See State v. Anderson*, No. 1 CA–CR 16–0194, 2018 WL 618583, at *1–5 (Ariz. Ct. App. Jan. 30, 2018) (affirming sentence of "life with the possibility of parole after 25 years" for a first-degree murder conviction sustained in November 2015); *see also State v. Shine*, No. 1 CA–CR 15–0453, 2016 WL 3773506, at *1–3 (Ariz. Ct. App. July 12, 2016) (affirming sentence of "life imprisonment with the possibility of parole after 25 years" for a first-degree murder committed in October 2011).

To find that Petitioner was required to research and investigate the legal distinction between "release" and "parole" immediately after his direct appeal, while Arizona courts continued to ignore that distinction, would be to require the "maximum feasible diligence," rather than "reasonable diligence in the circumstances."[9] *Ford*, 683 F.3d at 1235. Under

correctness that can be overcome only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Court finds that the presumption has been rebutted. Moreover, Judge Leonardo's misstatement is merely an extra reason for concluding that Petitioner's claims were not immediately discoverable. That Mr. Grills affirmatively misadvised Petitioner is sufficient by itself to conclude that Petitioner is entitled to a start date under 28 U.S.C. § 2244(d)(1)(D).

[8] It is noteworthy that even Paul Banales—the attorney who first argued that Mr. Grills rendered ineffective assistance by misadvising Petitioner about the availability of parole—initially believed that Petitioner would be eligible for parole one day. (*See* Doc. 1-2, Ex. M, at 160.)

[9] It is immaterial that Petitioner was sentenced to life with the possibility of "release," whereas the defendants in *Anderson* and *Shine* were sentenced to life with the possibility of "parole." As explained in this Order, the record strongly indicates the trial court believed that the sentence imposed carried parole eligibility after 25 years. That some defendants (like those in *Anderson* and *Shine*) received "parole" sentences while others (like Petitioner) received "release" sentences shows only that the synonymizing of "parole"

Petitioner's reasonable misapprehension, he would have been eligible for parole in 2023. He made inquiries far in advance of that date. Soon after being informed by his family that the Arizona Department of Corrections had replaced his "2023 parole eligibility date" with "life and the following date of 9999," Petitioner asked a correctional officer for information, eventually discovering in April 2014 that he could never be paroled. (*See* Doc. 24 at 7–8; Doc. 39-14 at 4.)

The Court finds that Petitioner could not have become aware of the vital facts underlying his claim earlier, and that he exercised due diligence after first learning something was amiss. *Cf. Nordelo v. Sec'y, Fla. Dep't of Corr.*, 635 F. App'x 636, 638–40 (11th Cir. 2015) (per curiam) (§ 2254 petition alleging attorney misadvised petitioner about parole eligibility was untimely, where petitioner waited years after eligibility date to make inquiries). He is therefore entitled to a start date determined under § 2244(d)(1)(D).

Petitioner asserts generally that he learned the vital facts in 2014, but the precise date of discovery is unclear. The issue is immaterial, however, because the Petition is timely with the benefit of equitable tolling.[10]

## B. Equitable Tolling

Petitioner urges the Court to apply equitable tolling. He argues that the widespread confusion surrounding Arizona's truth-in-sentencing law constitutes an extraordinary circumstance and that he has diligently pursued relief since learning the relevant facts. The Court agrees that Petitioner is entitled to equitable tolling.

"[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing. The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." *Ford*, 683 F.3d at 1237 (internal citations and quotation marks omitted). "Equitable tolling is justified in few cases."

with "release" was a common error.

[10] Petitioner is not entitled to statutory tolling because, in the last reasoned state court decision, the Arizona Court of Appeals found that the second PCR petition was untimely. *See* 28 U.S.C. § 2244(d)(2) (stating that tolling applies only to "properly filed" petitions); *Curiel v. Miller*, 830 F.3d 864, 868 (9th Cir. 2016) (en banc) (stating that untimely petitions are not "properly filed").

*Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003). "Determining whether equitable tolling is warranted is a fact-specific inquiry." *Id.* (internal quotation marks omitted). The petitioner bears the burden of showing entitlement to equitable tolling. *Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002).

Petitioner has established the requisite diligence. He inquired about parole eligibility years before the date he thought he would become eligible, and, once he learned that parole was not available, he quickly sought relief in the Arizona courts by filing a second PCR notice. *Cf. Pace v. DiGuglielmo*, 544 U.S. 408, 419 (2005) (finding lack of diligence where petitioner filed petition years after discovering claims). Petitioner's diligence continued after the PCR court denied his second PCR petition. Without the benefit of counsel, Petitioner sought reconsideration by the PCR court, then review by both the Arizona Court of Appeals and Arizona Supreme Court. This was reasonable diligence under the circumstances.

Furthermore, the widespread disregard of Arizona's truth-in-sentencing law is an extraordinary circumstance that prevented the timely filing of a federal habeas petition. In 1999, Petitioner was erroneously led to believe that he would be eligible for parole after 25 years. That error was far from uncommon; a cursory investigation shows that, following enactment of the truth-in-sentencing law, Arizona prosecutors continued to offer parole in plea agreements, Arizona trial courts continued to accept such plea agreements, and the Arizona Court of Appeals continued to review life-with-parole sentences without regard for the truth-in-sentencing law's application. Nor was the error short-lived or easily discoverable; as stated above, the Arizona Court of Appeals affirmed a life-with-parole sentence as recently as January 2018, and the Arizona legislature enacted legislation addressing the problem only several months ago, in August 2018. Given the foregoing, Petitioner has demonstrated that exceptional circumstances prevented the timely filing of his federal habeas petition.

### C. Conclusion

The statute of limitation commenced at some point in early 2014 and was equitably

tolled until August 24, 2015, when the Arizona Supreme Court denied review of Petitioner's second PCR petition. Petitioner filed his federal Petition on March 14, 2016—well within the one-year limitation period. The Petition is thus timely.

**IV.    Procedural Default**

Respondents contend, and Petitioner does not dispute, that Petitioner's first claim is procedurally defaulted without excuse. The Court agrees with Respondents and thus does not address that claim here. Next, although Petitioner's second claim is procedurally defaulted, Petitioner has shown cause and prejudice under *Martinez v. Ryan*, 566 U.S. 1 (2012). Finally, the Court finds that Petitioner's fourth claim is procedurally defaulted without excuse.

**A.    Claim Two**

In his second claim, Petitioner alleges ineffective assistance of counsel during plea negotiations. This claim was initially raised in Petitioner's second PCR petition. (Doc. 1-2, Ex. I, at 23, Ex. L, at 109.) The PCR court found this claim precluded under Arizona Rule of Criminal Procedure 32.2(a)(3) because it should have been raised in Petitioner's first PCR proceeding but was not, and because Petitioner failed to tie his claim to the newly-discovered-facts exception set forth in Rule 32.1(e). (*Id.*, Ex. L, at 110.)

Although it is not clear that Petitioner clearly and distinctly raised this claim in his pro se petition for review in the Arizona Court of Appeals, Respondents argue that it was subsumed within Petitioner's claim that "[t]here are no procedural waivers for a constitutionally illegal sentence." (*See* Doc. 22-1, Ex. G, at 47.) The Arizona Court of Appeals rejected Petitioner's waiver argument on two grounds: first, Petitioner failed to support his argument with citation to legal authority, and, second, Petitioner was precluded from raising a claim of illegal sentence in a successive and untimely petition. (Doc. 1-2, Ex. P, at 285–86.) The Court agrees with Respondents that these rulings show that Petitioner's claim is procedurally defaulted. *See Hurles v. Ryan*, 752 F.3d 768, 780 (9th Cir. 2014) ("Arizona's waiver rules are independent and adequate bases for denying [post-

conviction] relief." (citations omitted)).[11]

Thus, federal habeas review is barred unless Plaintiff can demonstrate cause and prejudice.[12] *Id.* He argues that he has shown cause pursuant to the Supreme Court's decision in *Martinez*. *Martinez* held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 566 U.S. at 9. Cause is shown under *Martinez* where

> (1) the claim of ineffective assistance of trial counsel was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the initial review proceeding in respect to the ineffective-assistance of trial-counsel claim; and (4) state law *requires* that an ineffective assistance of trial counsel claim be raised in an initial-review collateral proceeding.

*Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (ellipsis, brackets, and some internal quotation marks omitted) (citing *Martinez*, 566 U.S. at 13–14, 17–18).

### 1. Substantiality & Ineffective Assistance of PCR Counsel

Because Petitioner was represented by counsel during his initial-review collateral proceeding, he must "make two related showings about the strength of his particular [ineffective-assistance] claim to excuse its default." *Runningeagle v. Ryan*, 825 F.3d 970, 982 (9th Cir. 2016). "First, the [ineffective-assistance] claim must be 'a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.'" *Id.* (quoting *Martinez*, 566 U.S. at 14.) "Second, a petitioner must show that 'appointed counsel in the initial-review collateral proceeding, where the claim should have been

---

[11] Petitioner argues that his claim is not procedurally defaulted because the Arizona Court of Appeals did not "expressly apply any procedural bar . . . to a claim of ineffective assistance of counsel." However, if Petitioner accepts Respondents' contention that his ineffective-assistance claim was raised indirectly as part of the waiver argument—which he must, or else his claim is unexhausted—then he must also accept the Arizona Court of Appeals' reasons for rejecting the waiver argument.

[12] A second exception to the procedural-default doctrine is available to those who can show a "fundamental miscarriage of justice," i.e., that they are actually innocent. *See Gage v. Chappell*, 793 F.3d 1159, 1167 (9th Cir. 2015). Petitioner does contend that he can meet this exception.

raised, was ineffective under the standards of *Strickland v. Washington*.'" *Id.* (quoting *Martinez*, 566 U.S. at 14). Under *Strickland*, a petitioner asserting a claim of ineffective assistance of counsel must show both deficient performance and prejudice. 466 U.S. 668, 687 (1984). To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Petitioner has shown that his ineffective-assistance-of-trial-counsel claim is substantial.[13] Contrary to Respondents' arguments, the record convincingly shows that Mr. Grills believed that a defendant convicted of first-degree murder in 1999 could be sentenced to life with the possibility of parole after 25 years. Against that backdrop, there clearly is "some merit" to Petitioner's contention that he was misadvised by Mr. Grills and relied on that bad advice in deciding to reject the plea offer. *See Nunes v. Miller*, 350 F.3d 1045, 1054 (9th Cir. 2003) (finding prima facie case of ineffective assistance where petitioner rejected plea based on erroneous information given by attorney). Because Petitioner is unlikely to be granted executive clemency, the rejection of the plea offer resulted in what is effectively a natural-life sentence, which unquestionably is more severe than the term-of-years sentence offered in the rejected plea. *See Lafler v. Cooper*, 566 U.S. 156, 164 (2012) (explaining that, where counsel allegedly provided ineffective assistance during plea negotiations, prejudice is demonstrated by showing "that the conviction or sentence, or both, under the [rejected plea] offer's terms would have been less severe than under the judgment and sentence that in fact were imposed").

Proceeding to the second step under *Martinez*, Petitioner contends that Mr. Couser rendered ineffective assistance by failing to raise Mr. Grills' ineffectiveness during plea

---

[13] A showing of substantiality satisfies the "prejudice" prong of the cause-and-prejudice framework. *Atwood v. Ryan*, 870 F.3d 1033, 1059 n. 21 (9th Cir. 2017) ("[U]nder *Martinez v. Ryan*, a prisoner satisfies the prejudice prong of the 'cause and prejudice' standard for overcoming a procedural default when the prisoner's claim of trial-level ineffective assistance of counsel . . . is substantial.").

negotiations. The Court finds that Mr. Couser was ineffective under *Strickland*.

Failure to raise a claim in a PCR petition "is not deficient performance unless that claim was plainly stronger than those actually presented to the" PCR court. *Davila v. Davis*, 137 S. Ct. 2058, 2067 (2017); *see Smith v. Robbins*, 528 U.S. 259, 288 (2000). The strength of Petitioner's ineffective-assistance claim against Mr. Grills is apparent. That Mr. Grills argued for a life-with-parole sentence leaves no doubt he advised Petitioner—incorrectly—that parole was possible. A criminal defendant who is contemplating a plea offer will almost certainly place importance on the potential severity (or leniency) of a sentence under the plea as compared to a sentence after conviction at trial. Mr. Grills' erroneous advice deprived Petitioner of the ability to accurately consider that important, potentially dispositive factor, and it prejudiced Petitioner by resulting in a more severe sentence. *See Nunes*, 350 F.3d at 1054; *Lafler*, 566 U.S. at 164.

The foregoing claim of ineffective assistance during plea negotiations is clearly stronger than the claims presented by Mr. Couser in the first PCR petition.

Mr. Couser argued that Mr. Grills was ineffective by failing to challenge the felony-murder rule based on legislative intent and due process. (Doc. 22-1, Ex. E, at 14–15.) He also argued that Mr. Grills was ineffective by failing to challenge limitations placed on an expert witness by the trial court. (*Id.* at 16.) These issues (although not couched in terms of effectiveness of counsel) were raised in Petitioner's direct appeal. (*See* Doc. 1-1, Ex. C, at 53, 56–57, 60.) Although the Arizona Court of Appeals found them waived because they were not raised in the trial court, it nevertheless proceeded to explain why all of the foregoing arguments were foreclosed by Arizona law. (*Id.* at 53–54, 56–58, 60.) Thus, these claims are clearly weaker than the ineffective-assistance claim alleged in this proceeding. *See Sanders v. Cullen*, 873 F.3d 778, 815 (9th Cir. 2017) ("The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel." (quoting *Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982))).

Mr. Couser also argued that Mr. Grills was ineffective by withdrawing a request for a doctor to testify about Petitioner's head injury at a hearing concerning the admissibility

of Petitioner's confession, and by failing to adequately challenge Petitioner's confession on grounds of voluntariness, reliability, and competency. (Doc. 22-1, Ex. E, at 16.) Although these arguments hold more weight, they are not strong. The trial court was provided with a video of the confession, which depicted Petitioner talking with police for approximately two hours with no evident mental impairments. (Doc. 1-1, Ex. G, at 117.) Furthermore, there was witness testimony that Petitioner was beaten up by the victims mere hours before the murder, that Petitioner had threatened to return later, and that one of the assailants had said "let's go" in a voice that sounded like Petitioner's. (*Id.*, Ex. B, at 21, Ex. D, at 65.)

Given the foregoing, it is not apparent that Mr. Grills deficiently litigated the motion to suppress, nor is it apparent (given the evidence against Petitioner) that Mr. Grills' conduct prejudiced Petitioner. Thus, the ineffective-assistance claim raised in this proceeding is clearly stronger than the claims raised by Mr. Couser, and Mr. Couser was ineffective under *Strickland*'s first prong. *See Smith*, 528 U.S. at 288 (stating that *Strickland*'s first prong is satisfied by "showing that a particular nonfrivolous issue [that was not presented] was clearly stronger than issues that counsel did present").

Petitioner must also establish that Mr. Couser's error was prejudicial:

> Although the prejudice at issue is that in PCR proceedings, this is a recursive standard. It requires the reviewing court to assess trial counsel's as well as PCR counsel's performance. This is because, for [the court] to find a reasonable probability that PCR counsel prejudiced a petitioner by failing to raise a trial-level [ineffective-assistance] claim, [the court] must also find a reasonable probability that the trial-level [ineffective-assistance] claim would have succeeded had it been raised.

*Runningeagle*, 825 F.3d at 982. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Petitioner has demonstrated that there is a "reasonable probability" that he would have accepted the plea offer rather than risk trial and a resulting life-without-parole sentence. Under *Martinez's* "recursive standard," therefore, there is a reasonable probability that the result of Petitioner's first PCR proceeding would have been different had Mr. Couser raised the

issue.

### 2. Initial-Review Collateral Proceeding

Arizona law requires prisoners to raise ineffective-assistance claims in PCR proceedings rather than direct appeals. *State v. Spreitz*, 39 P.3d 525, 527 (Ariz. 2002). Mr. Couser failed to raise Petitioner's substantial ineffective-assistance claim during the initial PCR proceeding. This satisfies the third and fourth *Martinez* requirements.

Respondents argue that Petitioner is not entitled to relief under *Martinez* because Petitioner's default occurred in the Arizona Court of Appeals, not during "initial-review collateral proceedings" before the PCR court. However, Arizona law clearly holds that an ineffective-assistance claim that could have been raised in the initial PCR proceeding is waived and precluded in subsequent PCR proceedings. *State v. Goldin*, 365 P.3d 364, 367–68 (Ariz. Ct. App. 2015). Thus, the default occurred when Mr. Couser failed to raise Petitioner's ineffective-assistance claim in the first PCR proceeding, not when the Arizona Court of Appeals acknowledged the default on review of the second PCR proceeding.

### 3. Conclusion

Petitioner has established cause and prejudice to excuse the default of his second claim. Respondents raise one final argument on this point. Noting that *Martinez* is based in equity, Respondents contend that Petitioner's default should not be excused because he waited nearly ten years to pursue his claims. They argue that their ability to defend Petitioner's conviction and sentence has been irreparably prejudiced by the deaths of Mr. Grills and Mr. Couser. As explained at length in this Order, however, Petitioner reasonably discovered his claims in 2014. He thus shares no fault for the delay.

### B. Claim Four

In his fourth claim, Petitioner alleges that Arizona's truth-in-sentencing law is unconstitutionally vague. This claim is procedurally defaulted because the Arizona Court of Appeals found it waived and precluded. *See Hurles*, 752 F.3d at 780. Petitioner argues that he can establish cause to excuse the default under *Maples v. Thomas*, 565 U.S. 266 (2012), because his second PCR attorney, Mr. Banales, abandoned him. The Court

disagrees.

In *Maples*, the petitioner's PCR attorneys caused the default by abandoning him without notice during the PCR proceeding. 565 U.S. at 281. Petitioner's circumstances are markedly different. The default was caused not by Mr. Banales, but by Petitioner's failure to raise the claim in the first PCR proceeding. Furthermore, Petitioner was not "abandoned" in the sense that led the Supreme Court to find cause to excuse Maples' default. Petitioner was not left helpless; Mr. Banales informed him that he would need to appeal without representation, which he did. (Doc. 22-1, Ex. G, at 59.) Petitioner has not shown cause to excuse his default.

**V.    Conclusion**

Respondents' first objection (i.e., that Petitioner is not entitled to equitable tolling) will be overruled. Their second objection (i.e., that Petitioner's claims are procedurally defaulted without excuse) will be overruled to the extent that the default of Claim Two is excused. Their third objection (i.e., that the Petition should not be granted without them having an opportunity to brief the merits) will be sustained.

Claims One, Three, and Four will be dismissed. Because Petitioner has shown cause and prejudice to excuse the default of Claim Two, the Court will apply a de novo standard of review to that claim. *Apelt v. Ryan*, 878 F.3d 800, 825 (9th Cir. 2017). Furthermore, given the passage of time and death of Mr. Grills, a key witness, the record appears to be as complete as it can be. The Court thus finds that discovery and an evidentiary hearing are unwarranted, and that Claim Two will be decided based on the briefing and documentary evidence. *See Runningeagle*, 825 F.3d at 990 ("Where documentary evidence provides a sufficient basis to decide a petition, the court is within its discretion to deny a full hearing." (citing *Phillips v. Ornoski*, 673 F.3d 1168, 1179 (9th Cir. 2012))); *Smith v. Mahoney*, 611 F.3d 978, 997 (9th Cir. 2010) (same).

**IT IS ORDERED:**

1.    The Report and Recommendation (Doc. 29) is **adopted in part and rejected in part** as set forth in this Order. Respondents' Objections (Doc. 34) are **sustained in part**

**and overruled in part** as set forth in this Order.

2.     Claims One and Four of the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) are **dismissed** as procedurally defaulted.  Claim Three of the Petition is **dismissed** as non-cognizable on federal habeas review.

3.     On or before **March 1, 2019**, Respondents shall file an answer to the Petition, addressing the merits of Claim Two.  Petitioner may file a traverse on or before **March 15, 2019**.  The parties may submit as exhibits any relevant evidence that is not part of the current record.

Dated this 12th day of February, 2019.


Honorable Rosemary Márquez
United States District Judge