**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Ray Viramontes, | No. CV-16-00151-TUC-RM |
| Petitioner, | **ORDER** |
| v. | |
| Attorney General of the State of Arizona, et al., | |
| Respondents. | |

Pending before the Court is Petitioner Robert Ray Viramontes' Petition for Writ of Habeas Corpus. (Doc. 1.) Petitioner was convicted after a jury trial of first-degree murder, two counts of aggravated assault, and first-degree burglary. (Doc. 34-1 at 253-54.)[1] He alleges that his trial attorney rendered ineffective assistance by incorrectly informing him that he would be eligible for parole after 25 years of imprisonment, even if convicted of murder at trial. (Doc. 1 at 9-12.) Petitioner further alleges that, absent trial counsel's ineffective assistance, he would have accepted a plea agreement. (*Id.*) For the following reasons, the Court will issue a conditional writ of habeas corpus.

**I.     Arizona's Sentencing Scheme**

Prior to January 1, 1994, a defendant convicted of first-degree murder could be sentenced to life with the possibility of parole after 25 years. *See State v. Fierro*, 804 P.2d 72, 90 (Ariz. 1990). In 1993, Arizona enacted its truth-in-sentencing law and eliminated parole for crimes committed on or after January 1, 1994. *See State v. Rosario*, 987 P.2d

---

[1] All record citations herein refer to the page numbers generated by the Court's electronic filing system.

226, 230 (Ariz. App. 1999). Defendants convicted of first-degree murder on or after that date face three possible sentences: death, natural life (life with no chance of release on any basis), or life with the possibility of "release" after 25 years. *See State v. Martinez*, 100 P.3d 30, 33 (Ariz. App. 2004). "Release" may be granted only through executive clemency (e.g., a pardon)—a form of relief unlikely to be granted to defendants convicted of first-degree murder. *See State v. Vera*, 334 P.3d 754, 760 (Ariz. App. 2014).

Despite the elimination of parole, prosecutors continued to offer parole in plea agreements, and judges continued to accept such agreements and impose sentences of life with the possibility of parole. *See, e.g.*, *id.* (noting that the sentencing court was mistaken about the availability of parole); Governor's Letter to Ariz. Sec'y of State (Apr. 30, 2018), *available at* https://www.azleg.gov/govlettr/53leg/2r/sb1211.pdf (expressing puzzlement as to why parole sentences continued to be imposed after January 1, 1994). In response, the Arizona legislature passed Senate Bill 1211, which honors those plea agreements notwithstanding the elimination of parole. *See* Ariz. Rev. Stat. § 13-718. No form of relief exists for defendants who received the same sentence following conviction at trial.

## II.     Factual Background

Petitioner was charged in 1999 with first-degree murder, two counts of aggravated assault, and first-degree burglary. (Doc. 39-1 at 1-2.) The State alleged that he had broken into a house and attacked victims with a Samurai sword early on Christmas morning of 1998, killing one person and wounding another. (Doc. 1-1 at 53; Doc. 39-1 at 1-2.) Petitioner confessed to the crime and had an established motive. (*See* Doc. 1-1 at 21-25.) His attorney informed him that his prospects at trial were "bleak." (Doc. 1-2 at 44.) If convicted, Petitioner was told, he faced a potential life sentence with the possibility of "probation" after 25 years. (Doc. 39-3 at 17.) The State offered a plea bargain that did not seem much better: plead guilty to second-degree murder and aggravated assault in exchange for a sentence with a "floor" of 20 years in prison. (Doc. 1-2 at 28; Doc. 39-3 at 15-16.) Petitioner declined the plea bargain. (Doc. 39-3 at 20.) The State later "provisionally" offered a plea agreement with a sentencing range of 10 to 22 years;

Petitioner indicated that he would accept such an agreement, but the prosecutor was unable to obtain supervisory approval. (Doc. 1-2 at 43-49, 54.)

The case proceeded to a jury trial, and Petitioner was found guilty of first-degree murder, two counts of aggravated assault, and first-degree burglary. (Doc. 1-1 at 3-9; Doc. 34-1 at 253-54.) His Presentence Report explained that that he could be sentenced to either "natural life" or "life" for the murder conviction. (Doc. 28 at 3.) If sentenced to "natural life," he would never be eligible for "commutation or parole, work furlough or release." (*Id.*) If sentenced only to "life," he would have "no release on any basis until the completion of the service of 25 calendar years." (*Id.*) The State asked the court to sentence Viramontes to natural life on the murder charge and argued that "justice demands that this man be removed from society for the rest of his life." (Doc. 34-1 at 258.) Petitioner requested the court sentence him to a "life sentence with parole at 25 years." (*Id.* at 262.) The court determined that Petitioner "be imprisoned for life, no release eligibility until the completion of 25 years of service of the sentence." (*Id.* at 263.)

Petitioner's sentence was memorialized in a Judgment as follows:

| | | |
|---|---|---|
| Count 1: | 25 years; | |
| Count 2 and 3: | 10 years each count, concurrent with each other and with Count 1 and consecutive community supervision of 17 months; | |
| Count 4: | 10.5 years consecutive to Count 1 and community supervision of 18 months. | |

(Doc. 1-1 at 4). Later in the Order, Petitioner's sentence on Count 1 was described as "Life with No Release on Any Basis until the Completion of the Service of 25 Calendar Years." (*Id.* at 5.)

Petitioner began serving his sentence in the custody of the Arizona Department of Corrections. His direct appeals and initial requests for postconviction relief ("PCR"), which raised claims not relevant here, were unsuccessful. (Doc. 1-1 at 52-61, 114-18; Doc. 22-1 at 5, 37-42.) In 2014, Petitioner was informed by the Arizona Department of Corrections

that he was not eligible for parole consideration. (Doc. 1 at 10; Doc. 1-2 at 21, 56.) Because of Arizona's truth-in-sentencing law, Petitioner was told, he would never "be released from his life sentence" and therefore would never be able to begin his consecutive 10.5-year burglary sentence. (Doc. 1-2 at 21, 59.) His only possibility for release was by petitioning the Arizona Board of Executive Clemency ("ABEC") for clemency and then obtaining approval by the Governor. (*Id.* at 22.)

Unlike parole, the chances of obtaining release through executive clemency are slim.[2] A prisoner eligible for parole must demonstrate only that "there is a substantial probability that the applicant will remain at liberty without violating the law and that the release is in the best interests of the state." A.R.S. § 31-412(A). In contrast, an applicant seeking commutation must show that, among other things, there is "clear and convincing evidence that the sentence imposed is clearly excessive." A.R.S. § 31-402(C)(2). Furthermore, while parole decisions are made by the ABEC without review by the Governor, A.R.S. § 31-412(A), a grant of commutation first requires unanimous approval by the ABEC and then subsequent approval by the Governor, A.R.S. § 31-402(B). Whereas a prisoner is automatically granted a parole hearing and may request re-hearing within six months to a year, one seeking a commutation must wait five years after a denial before re-petitioning. A.R.S. § 31-403(A).

Faced with the realization that he was misadvised by his attorney, Petitioner filed a pro se Notice of Post-Conviction Relief on April 17, 2014, arguing that he had newly discovered evidence and his failure to file a timely notice was without fault on his part. (Doc. 1-2 at 199-203; Doc. 39-14.) Petitioner argued that he was told by his attorney (and by his judge and prosecutor) that he would be eligible for parole after 25 years. (Doc. 1-2 at 202.) He averred he had recently discovered that was not true, and he argued that he therefore received ineffective assistance of counsel when considering the plea bargains that

---

[2] For example, in 2013, 326 parole hearings led to 80 grants of parole (approximately 24% chance), while in the same year, 1122 commutation hearings ultimately led to only 6 commutations (approximately .005% chance). Matthew B. Meehan, A Gathering Storm: Future Challenges Necessitate Reform of Arizona's Dysfunctional Post-Conviction Regime, 9 Ariz. Summit L. Rev. 1, 13 (2016).

had been offered to him. (*Id.*) The trial court appointed counsel for Petitioner. (*Id.* at 205.) Petitioner then filed through counsel a successive Petition for Post-Conviction Relief, alleging among other things that Petitioner's initial trial counsel had been ineffective in plea bargain negotiations because he told Petitioner that he would be eligible for parole after 25 years even if convicted of murder. (Doc. 1-2 at 18-26.) The Petition filed through counsel did not raise the newly-discovered evidence exception that Petitioner raised in his PCR Notice. (Doc. 22-1 at 52.)

The trial court denied Petitioner's IAC claim as precluded under Arizona Rule of Criminal Procedure 32.2(a) because the Petition "abandoned any effort" to tie Petitioner's "allegations of being misled by his trial attorney to newly discovered material evidence or any other non-precluded basis for relief." (Doc. 22-1 at 52-53.) Petitioner filed a request for reconsideration, which the trial court denied. (*Id.* at 56-57.) The Arizona Court of Appeals granted review but denied relief (Doc. 1-2 at 283-86), and the Arizona Supreme Court denied a Petition for Review (*id.* at 281.)

Petitioner then brought this pro se Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. (Doc. 1.) Respondents filed a Limited Answer, arguing Petitioner's claims were untimely and procedurally defaulted. (Doc. 22.) Magistrate Judge Bernardo P. Velasco issued a Report and Recommendation, recommending that this Court find the Petition timely, grant it, and remand to the Arizona state court for further proceedings. (Doc. 29.) Before taking up the Report and Recommendation, the Court appointed Petitioner counsel (Doc. 31) and ordered supplemental briefing on the issue of procedural default (Doc. 48). After supplemental briefing, the Court found that the Petition is timely with the benefit of equitable tolling but dismissed three out of the four claims raised therein as either non-cognizable on federal habeas review or procedurally defaulted without excuse. (Doc. 53.) The Court found that the remaining claim raised in the Petition— alleging ineffective assistance of trial counsel during plea negotiations—was procedurally defaulted but that Petitioner had established cause and prejudice to excuse the default under *Martinez v. Ryan,* 566 U.S. 1 (2012). (*Id.*) Accordingly, the Court ordered Respondents to

1  file an Answer addressing the merits of Petitioner's remaining claim. (*Id.*; *see also* Docs. 56, 57.)

### III. Standard of Review

In adjudicating habeas corpus petitions from state prisoners, federal courts are typically restricted to a very deferential standard of review under 28 U.S.C. § 2254(d). The federal court may only grant habeas relief if a state court's adjudication of a petitioner's claims resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law," or if the state proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.*

Notwithstanding this typically deferential standard, a federal habeas court conducts a de novo review of claimed constitutional errors when the state courts reject a petitioner's arguments on procedural grounds without reaching the merits and the federal court subsequently finds the procedural default excused. *See Apelt v. Ryan,* 878 F.3d 800, 825 (9th Cir. 2017). That is the posture of Petitioner's remaining claim of ineffective assistance of trial counsel in plea negotiations. Petitioner raised this claim in his second state PCR Petition (Doc. 1-2 at 18-26), but the state courts found it precluded and denied relief without reaching the merits (Doc. 1-2 at 110, 283-86). This Court has already found that the procedural default of the claim is excused under *Martinez* because Petitioner's post-conviction counsel rendered ineffective assistance in failing to raise trial counsel's ineffective assistance in Petitioner's first PCR Petition. (Doc. 53.) Because the state courts uniformly declined to address the merits of the claim, there is no state court analysis to which the Court can give deference, and the Court therefore conducts a de novo review. *Apelt,* 878 F.3d at 825.

### IV. Discussion

Petitioner claims that inadequate assistance of counsel caused him to reject a plea bargain, after which he went to trial and received a sentence harsher than that offered in the rejected plea bargain. A criminal defendant's Sixth Amendment right to counsel

includes the right to "'effective assistance of competent counsel'" during plea negotiations. *Lafler v. Cooper,* 566 U.S. 156, 162 (quoting *McMann v. Richardson,* 397 U.S. 759, 771 (1970)). The familiar "two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart,* 474 U.S. 52, 57 (1985). To demonstrate ineffective assistance under *Strickland,* the defendant must show that (1) his attorney's representation "fell below an objective standard of reasonableness," and that (2) the defendant suffered "prejudice" due to this ineffective representation. *Strickland v. Washington,* 466 U.S. 668, 688, 692 (1984).

### A. Deficient Performance under *Strickland*

To establish his ineffective assistance claim, Petitioner must first show that his trial attorney's "representation fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688. "A defendant has the right to make a reasonably informed decision whether to accept a plea offer." *Turner v. Calderon*, 281 F.3d 851, 880 (9th Cir. 2002) (internal quotation and alteration marks omitted.) In the plea-bargaining context, constitutionally defective performance under *Strickland* occurs when counsel provides advice that is "'so incorrect and so insufficient that it undermine[s] [the defendant's] ability to make an intelligent decision about whether to accept the [plea] offer.'" *Id.* (quoting *United States v. Day,* 969 F.2d 39, 43 (3d. Cir. 1992)). "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland,* 466 U.S. at 690. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Here, Petitioner alleges that his trial attorney provided ineffective assistance by incorrectly informing him that he would be eligible for parole even if convicted at trial. It is clear from the record that Petitioner's trial counsel did repeatedly so represent, and Respondents do not argue otherwise. Although trial counsel is entitled to a presumption that any error was an "exercise[] [of] reasonable professional judgment," trial counsel's incorrect advice here cannot be understood as a strategic decision upon which reasonable

minds might differ. *Strickland,* 455 U.S. at 690. Rather, counsel clearly misinterpreted, or did not review, the applicable statutes, leading him to render objectively incorrect advice. *See Lafler,* 566 U.S. at 162-63 (defense counsel who informed defendant of "incorrect legal rule" rendered deficient performance).

Moreover, counsel's incorrect assurances that Petitioner would have a chance of parole even if convicted of first-degree murder at trial violated Petitioner's right "to make a reasonably informed decision whether to accept a plea offer." *Turner,* 281 at 851. Counsel's advice was "so incorrect and so insufficient" that Petitioner's "ability to make an intelligent decision about whether to accept" the plea offer was compromised. *Id.*

The Court acknowledges that counsel's errors with respect to the availability of "parole" as one possible method of "release" under the applicable statute were not unheard of in Arizona state courts. However, the possibility that confusion over parole eligibility existed in Arizona at the time of Petitioner's trial and sentencing does not render counsel's incorrect advice objectively reasonable. The focus of the inquiry is on whether counsel's advice was an exercise of reasonable professional judgment, not whether similar errors were made by other attorneys or by courts. The Court cannot conclude that objectively incorrect advice was nevertheless reasonable. Accordingly, the Court finds that Petitioner's counsel's "representation fell below an objective standard of reasonableness," and that Petitioner has therefore satisfied *Strickland's* performance prong. 466 U.S. at 688.

**B.     Prejudice under *Strickland***

To demonstrate prejudice under *Strickland,* the defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. When, as here, ineffective assistance of counsel during plea negotiations causes a defendant to reject a favorable plea bargain and receive a harsher sentence after trial, the defendant must show "that but for the ineffective advice of counsel there is a reasonable probability" that (1) the plea agreement "would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it[)]"; (2) "the court would have accepted" the

terms of the plea agreement; and (3) "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler*, 566 U.S. at 164. In determining prejudice, the Court conducts a "case-by-case examination" of the totality of the evidence. *Williams v. Taylor,* 529 U.S. 362, 391 (2000).

Petitioner easily meets two of the three showings required to demonstrate that counsel's ineffective assistance in plea negotiations prejudiced him by causing him to reject a favorable plea bargain and proceed to trial. *Lafler,* 566 U.S. at 164. First, based on the transcripts of the pretrial hearings in Petitioner's case, the trial court appeared not just willing, but eager, to approve a plea bargain and avoid trial. The transcripts make clear that, had Petitioner accepted the plea bargain offered, "the court would have accepted its terms." *Id.* Second, Petitioner rejected a plea bargain that would have provided for a plea to second-degree murder and a sentence of a term of years. He instead went to trial, was convicted of first-degree murder, and was sentenced to life imprisonment. Therefore, it is clear "that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler,* 566 U.S. at 164.

The final showing, that there is a reasonable probability that Petitioner would have accepted the plea bargain but for counsel's constitutionally deficient performance, is a somewhat closer question. The Court first considers what Petitioner believed to be the "respective consequences after a trial and by plea." *Lee v. United States*, 137 S. Ct 1958, 1966 (2017). Here, Petitioner reasonably believed that even if convicted at trial he would be eligible for parole after 25 years, and he was faced with a plea bargain providing for a *minimum* of 20 years in prison. The difference between a minimum sentence of 20 years and a minimum sentence of 25 years is similar enough that it is reasonable to infer that, even if he believed that he was likely to be convicted, he may have preferred throwing a "Hail Mary" at trial. *See id.* at 1966-67 (explaining that even where a defendant "has no realistic defense to a charge carrying a 20-year sentence," it is reasonable to believe she

would still "choose trial" when "the prosecutor's plea offer is 18 years"). Had Petitioner been adequately advised by his attorney as to the impossibility of parole, "it seems quite reasonable that when faced with a probable life sentence without the possibility of parole, [Petitioner] would have jumped at a negotiated plea to a lesser offense. After all, going home *eventually* is far preferable than never going home at all." *Byrd v. Skipper,* 940 F.3d 248, 259 (6th Cir. 2019). The respective consequences therefore support Petitioner's claim that he would have accepted the plea bargain but for his trial counsel's ineffective assistance.

The evidence regarding the course of plea bargain negotiations further bolsters Petitioner's claim. Petitioner was advised that he would receive a 25-year minimum sentence even if convicted at trial, and he rejected a 20-year minimum plea on that basis. He was, however, willing to enter into a plea agreement providing for *up to* 22 years in prison. In *Moss v. United States,* the court rejected the defendant's ineffective assistance claim in part because the defendant had maintained his innocence and made clear that he would not plead guilty under any circumstances. 323 F.3d 445, 475 (6th Cir. 2003). Similarly, the court in *Osley v. United States* found that the defendant's continued insistence upon his own innocence undermined his argument that he would have accepted a plea agreement but for ineffective assistance. 751 F.3d 1214, 1224 (11th Cir. 2014). Unlike in *Osley* and *Moss,* Petitioner here was unequivocally willing to enter into a plea agreement that provided a real benefit. This supports his claim that he would have accepted the original plea if correctly advised by his attorney.

The Court also considers the strength of Petitioner's case at trial. A criminal defendant who does not have any viable defense would be unlikely to reject a favorable plea bargain as "defendants obviously weigh their prospects at trial in deciding whether to accept a plea." *Lee*, 137 S. Ct. at 1966. Here, Petitioner's confession was ruled admissible and his counsel informed him before trial that his outlook was "bleak." Petitioner knew that he did not have a strong case and would likely be convicted. This supports his argument that if correctly advised he would have accepted the original plea bargain.

Finally, the Court puts some weight on Petitioner's 2014 affidavit, signed and sworn before a notary public and included in Petitioner's 2014 petition for post-conviction relief. (Doc. 1-2 at 56-57.) Petitioner attests that "had I known I could not be paroled after 25 years on the murder count, I would have taken the plea." (*Id.* at 57.) He claims his trial attorney advised him that "even if [he] went to trial and was convicted, [he] would be eligible for release in 25 years since the sentence for first degree murder was 25 to life." (*Id.* at 56.) His trial attorney advised that "being released after 25 years meant" that the Petitioner "could get paroled after 25 years." (*Id.*) Arizona Department of Corrections later advised Petitioner that he is not eligible for parole or release after 25 years, nor could he begin to serve his consecutive sentence for burglary because he has no release date on the murder conviction. (*Id.*)

Although *Strickland* prejudice cannot be proven "solely" on the basis of a petitioner's affidavit, *Lee,* 137 S. Ct. at 1967, the "self-serving" nature of Petitioner's affidavit properly "bears on the affidavit's credibility, not on its cognizability." *SEC v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007) (internal quotation marks omitted). "Credibility is properly for the judgment of the trier of fact." *Davison v. United States,* 368 F.2d 505, 507 (9th Cir. 1996). The Court finds the representations in Petitioner's affidavit to be credible in light of the corroborating evidence discussed above.

Respondents argue that the affidavit must be given little or no weight. (Doc. 56 at 9.) However, unlike the cases Respondents rely on, the totality of evidence here *corroborates* rather than *contradicts* the assertions made in the affidavit. Respondents cite *Turner,* 281 F.3d at 881, in which the court discounted a petitioner's affidavit claiming that the petitioner there only rejected a plea because he did not understand that he faced a possible death penalty if convicted at trial. However, that affidavit was not credible because petitioner had "sat through the reading of his criminal information and the death-qualifying jury voir dire" and "was informed of the terms of the plea offer, thought about it overnight, and decided to turn it down." *Id.* Similarly, in *United States v. Allen,* the court rejected as self-serving a petitioner's testimony that he only represented himself at trial because the

- 11 -

court wouldn't appoint him an attorney he could work with. 153 F.3d 1037, 1041 (9th Cir. 1998). But the court only rejected this testimony in the face of a waiver signed by the defendant that stated: "I have terminated the services of my attorney. . . I do not trust licensed members of the State Bar Association . . . I fully realize that I will be the one who will suffer the consequences of [this] coming trial." *Id.* Likewise, in *United States v. Chraszcz,* the petitioner's conclusory claims were flatly contradicted by an affidavit from defense counsel backed by contemporaneous emails and phone messages. 671 Fed. App'x 968, 969 (9th Cir. 2016). Unlike in these cases, the contemporaneous evidence here lends credibility to Petitioner's affidavit rather than contradicting it.

Respondent also argues that Petitioner cannot demonstrate prejudice because "Viramontes assumed the risk that he would not earn release even if he were eligible for parole." (Doc. 56 at 11.) And to be sure, parole is a "matter of grace" that does not entitle one to the "right to expect anything other than the possibility of parole." *State v. Parle,* 521 P.2d 604, 608 (Ariz. 1974). But this does nothing to undermine the manifest reality that the mere *possibility* of parole often means *everything* to a person facing a life sentence. In analyzing the severity of a sentence, we may not "ignore" that one sentenced to life with the possibility of parole has "the possibility that he will not actually be imprisoned for the rest of his life." *See Rummel v. Estelle,* 445 U.S. 263, 281 (1980) (considering the availability of parole while determining whether a criminal sentence is unconstitutionally excessive).

Respondent further asserts that Petitioner cannot demonstrate prejudice because he was informed of the possibility of a natural life sentence if convicted of first-degree murder. (Doc. 56 at 12.) "No reasonable probability exists," argues Respondent, "that he would have pleaded guilty if told he faced a *de facto* life sentence. . . when he chose to go to trial with the knowledge that he faced natural life." (*Id.*) But respondents ignore the wide gap between the *mere possibility* of such a sentence and the *strong likelihood* that he would be convicted at trial and therefore receive a sentence of life without the possibility of parole.

The additional briefing regarding Petitioner's July 20, 1999 letter to his mother does

not change the Court's analysis. (Docs. 74, 75.) The letter indicates that Petitioner, at least to his mother, maintained his innocence of the crimes for which he was ultimately convicted. (Doc. 74-1.) However, nothing in the letter undermines Petitioner's fundamental claim that correct advice from his counsel regarding his possible sentences following a conviction at trial would have changed his position on the offered plea.

Upon careful consideration of the totality of the evidence, the Court determines that Petitioner has demonstrated a reasonable probability that he would have accepted the offered plea if not for the deficient performance of trial counsel. *See Williams,* 529 U.S. at 394.

## V. Remedy

The Supreme Court has explained that "Sixth Amendment remedies should be 'tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests.'" *Lafler,* 566 U.S. at 170 (quoting *United States v. Morrison,* 449 U.S. at 361, 364) (internal quotation marks omitted)). While the passage of time "makes it difficult to restore the defendant and the prosecution to the precise positions they occupied prior to the rejection of the plea offer," those positions provide a "baseline" that "can be consulted in finding a remedy that does not require the prosecution to incur the expense of conducting a new trial." *Id.* at 172. A remedy must "neutralize the taint of a constitutional violation," while not providing "a windfall to the defendant or needlessly squander[ing] the considerable resources the State properly invested in the criminal prosecution." *Id.* at 170 (internal quotation marks and citation omitted).

When, as here, a defendant declines a plea offer as a result of ineffective assistance of counsel and then receives a greater sentence as a result, the Supreme Court has identified two possible forms of remedy. *Id.* at 170-71. In some cases, the injury suffered is solely the greater sentence, such as when the defendant is convicted at trial of the same charges that would have been admitted as part of the plea bargain. *Id.* at 171. Resentencing alone may be a sufficient remedy in such a situation. *Id.* In other situations, such as when a

defendant is convicted after trial of a crime more serious than one to which he would have pled but for ineffective assistance, or when a judge's discretion is constrained by a mandatory minimum sentencing requirement, "resentencing alone will not be a full redress for the constitutional injury." *Id.* "In these circumstances, the proper exercise of discretion to remedy the constitutional injury may be to require the prosecution to reoffer the plea proposal. Once this has occurred, the judge can then exercise discretion in deciding whether to vacate the conviction from trial and accept the plea or leave the conviction undisturbed." *Id.*

Here, mere resentencing would not be sufficient to remedy the constitutional injury. Petitioner was not only convicted after trial of crimes more serious than those offered in the plea bargain that he was deprived of, but his conviction for first-degree murder also carries a mandatory minimum sentence. Petitioner rejected a plea bargain to second-degree murder and aggravated assault with a total sentence of between 20 to 43 years of incarceration. (Doc. 1-2 at 223; Doc. 39-3 at 15-17.) After trial, Petitioner was convicted of first-degree murder, first-degree burglary, and two counts of aggravated assault. (Doc. 1-1 at 3-9; Doc. 34-1 at 253-54.) Petitioner therefore rejected "an offer [] for a guilty plea to a count or counts less serious than the ones for which [Petitioner] was convicted after trial," and so "resentencing alone will not be a full redress for the constitutional injury." *Lafler,* 566 U.S. at 171. Moreover, at the time of Petitioner's conviction, first-degree murder was punishable only by death, natural life, or life without the possibility of release for 25 years. A.R.S. § 13-703(A) (West 1998). As a first-degree murder conviction "confines [the] judge's sentencing discretion after trial," resentencing alone would not be a sufficient remedy. *Lafler,* 566 U.S. at 171.

Where resentencing is inappropriate, the Supreme Court has explained that a district court may "require the prosecution to reoffer the plea proposal. Once this has occurred, the [state trial court] judge can then exercise discretion in deciding whether to vacate the conviction from trial and accept the plea or leave the conviction undisturbed." *Id.* The Court concludes that this is the appropriate remedy in Petitioner's circumstance.

Accordingly, the Court will issue a conditional writ of habeas corpus, and order that Petitioner be released from custody unless, within 120 days, the State reoffers him the plea agreement that he was deprived of as a result of ineffective assistance of counsel.

## VI.   Conclusion

"An ineffectiveness claim . . . is an attack on the fundamental fairness of the proceeding whose result is challenged." *Strickland*, 466 U.S. at 697. The record in this case shows that the fundamental fairness of Petitioner's underlying criminal proceeding was compromised by the ineffective assistance of his defense counsel.

Accordingly,

**IT IS ORDERED**:

(1) Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is **granted** with respect to the ineffective assistance of trial counsel claim asserted in Ground Two.

(2) Petitioner shall be released from custody unless, within **120 days**, the State reoffers Petitioner the equivalent terms of the plea agreement that he was deprived of as a result of ineffective assistance of counsel.

(3) The Clerk of Court is directed to enter judgment accordingly and close this case.

Dated this 15th day of March, 2021.

_____
Honorable Rosemary Márquez
United States District Judge